**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVIN CLEMENTE and BARBARA CLEMENTE<br>Plaintiffs,<br><br>v.<br><br>JANE DOE; TRENDY DIGITAL CONSULTING, INC.; MAEHAL ENTERPRISES, INC.; GUANGDA LOGISTICS, INC.; AURORRAL TRADE, INC.; PENGYUAN, INC.; DANCO GLOBAL, INC.; MIDDLESEX TRUCK AND AUTO BODY, INC.; WLF TRADING LIMITED; HUAYI ACCESS CO. LIMITED; WENYEXING LIMITED and JOHN DOES 1-10<br>Defendants. | Civil Action No.  3:24-cv-00314<br><br><br>**VERIFIED COMPLAINT** |

Plaintiffs, Kevin Clemente and Barbara Clemente (collectively "Plaintiffs"), by and through their attorneys, Connell Foley LLP, and for their Verified Complaint against all defendants, states as follows:

1. This is an action arising out of a sophisticated fraudulent scheme that defrauded Plaintiffs out of their assets valued at $716,480 dollars.

2. Defendant Doe relying upon aliases such as Viktoria Zara perpetrated a crypto currency scheme to defraud Plaintiffs. With the help of multiple entities also named as defendants in this suit and other unknown individuals and entities to be determined as the suit progresses, Doe scammed and misappropriated large sums of Plaintiffs' assets, eventually depositing those assets in several accounts in financial institutions to which she or her co-conspirators own, operate, control or otherwise have access.  Defendant Jane Doe used WhatsApp with telephone numbers 619-759-6808 and 408-610-4688 to communicate with Plaintiffs.   Jane Doe's actual identity is unknown to Plaintiffs and thus they cannot locate a physical address for her residence.

3.      Plaintiffs seek to recover their stolen funds and assets in this suit.

## THE PARTIES

4.      Plaintiff Kevin Clemente is an individual domiciled in Glen Gardner, New Jersey and is a citizen of the State of New Jersey.  Mr. Clemente is 71 years old.

5.      Plaintiff Barbara Clemente is an individual domiciled in Glen Gardner, New Jersey and is a citizen of the State of New Jersey.  Mrs. Clemente is 71 years old.

6.      Defendant Jane Doe is an individual and, upon information and belief, is *sui juris*. She has used aliases such as Viktoria Zara to defraud Plaintiffs.

7.      Defendant, Trendy Digital Consulting, Inc. is a New York Corporation with its principal place of business in Flushing, New York. Trendy Digital controlled and maintained a bank account at JP Morgan Chase Bank and received a wire transfer from Plaintiffs in the amount of $50,150.

8.      Defendant, Maehal Enterprises, Inc. is a Washington Corporation with its principal place of business located in Vancouver, Washington. Maehal controlled and maintained a bank account with Cathay Bank and received a wire transfer from plaintiffs in the amount of $71,200.

9.      Defendant, Guangda Logistics, Inc. is a California corporation with its principal place of business in City of Industry, California. Guangda Logistics controlled and maintained a bank account at JP Morgan Chase Bank and received a wire transfer from Plaintiffs in the amount of $65,200.

10.     Defendant, Aurorral Trade, Inc. is a California corporation with its principal place of business in Los Angeles, California. Aurorral Trade controlled and maintained a bank account at Cathay Bank and received a wire transfer from Plaintiffs in the amount of $15,000.

14412591-5

11.    Defendant, Pengyuan, Inc. is a California corporation with its principal place of business in Los Angeles, California. Pengyuan controlled and maintained a bank account at Cathay Bank and received a wire transfer from Plaintiffs in the amount of $18,000.

12.    Defendant, Danco Global, Inc. a California corporation with its principal place of business in Long Beach, California. Danco controlled and maintained a bank account at JP Morgan Chase Bank and received a wire transfer from Plaintiffs in the amount of $79,800.

13.    Defendant, Middlesex Truck and Auto Body, Inc. is a Massachusetts Corporation with its principal place of business in Boston, Massachusetts. Middlesex Truck and Auto Body controlled and maintained a bank account at JP Morgan Chase Bank and received a wire transfer from Plaintiffs in the amount of $133,565.

14.    Defendant, WLF Trading Limited is a New York Corporation with its principal place of business in Brooklyn, New York. WLF Trading controlled and maintained a bank account at Cathay Bank and received a wire transfer from Plaintiffs in the amount of $133,565.

15.    Defendant, Huayi Access Co. Limited is a corporation formed in Hong Kong, China with its principal place of business in Hong Kong, China. Huayi controlled and maintained a bank account at DBS Bank Limited and received a wire transfer from Plaintiffs in the amount of $80,000.

16.    Defendant, Wenyexing Limited is a corporation formed in Hong Kong, China with its principal place of business in Hong Kong, China. Wenyexing controlled and maintained a bank account at DBS Bank Limited and received a wire transfer from Plaintiffs in the amount of $70,000.

17.    John Does 1-10 are fictitious persons whose identities are currently unknown to Plaintiffs who fraudulently claimed to be representatives of a cryptocurrency trading platform

14412591-5

"3A" and in this false capacity induced Plaintiffs to make payments in the amount of $716,480 in service of alleged deposits, trades and attempted withdrawals on the platform.

## NON-PARTIES

18.     Non-party JP Morgan Chase Bank, a national bank, has provided separate bank accounts to multiple defendants, including Trendy Digital Consulting, Danco Global, Middlesex Truck, and Guangda Logistics and facilitated the transfer of Plaintiffs' funds from their bank account to these defendants' accounts. Details of those transactions are outlined in Table A.

19.     Non-party, Cathay Bank, a California Banking Corporation has provided separate bank accounts to defendants Aurorral Trade, Pengyuan, WLF Trading, and Maehal Enterprises. It has also facilitated the transfer of funds belonging to plaintiffs out of their accounts to accounts belonging to these defendants. Those transactions are detailed in Table A.

20.     Non-party, DBS Bank Limited, has provided bank accounts to defendants Huayi Access and Wenyexing Limited. It has also facilitated the transfer of funds belonging to plaintiffs out of their accounts to accounts belonging to these defendants. Those transactions are detailed in Table A.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

22.     This Court has personal jurisdiction over defendants because they committed a tort in this jurisdiction.

14412591-5

23.     This Court has subject matter jurisdiction over the controversies between the parties under 28 U.S.C. § 1331 since the controversies involve questions arising under the statutes of the United States.

24.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because the causes of action accrued in this jurisdiction.

**FACTS COMMON TO ALL COUNTS**

25.     In December 2022, Defendant Doe contacted Plaintiff Kevin Clemente via Facebook. The messages were unsolicited.

26.     Over the next several months, Defendant Doe engaged in friendly conversation with Plaintiff over the text application WhatsApp.

27.     Doe represented to Kevin Clemente that she resides in San Diego, California and she has profitably traded in a form of cryptocurrency derivatives, described to Kevin Clemente as short-term Bitcoin futures. She claimed to have made over $700,000 in profits trading in Bitcoin futures in the past three years.

28.     Based on the above representations, in or around January 2023, Doe induced Kevin Clemente to register for an account at a purported online trading platform known as "3A". 3A was described to Kevin Clemente as a company based in Hong Kong, China with offices in California.

29.     In or around January of 2023, Doe then demonstrated to Kevin Clemente how to execute trades on the alleged 3A platform. The trades appeared to return large profits within a short period of time on this platform. Kevin Clemente did not know at this time that the 3A platform was fake and it was designed to deceive him. No real trades were executed.

30.     In or around January of 2023, Doe further induced Kevin Clemente to begin transferring his funds to the purported 3A trading platform to conduct trading activity for Kevin

14412591-5

Clemente's sole benefit. Based on these representations, which Kevin Clemente, later learned to be false, he followed these instructions.

31.      On or about January 6, 2023, Kevin Clemente transferred his initial principal investment in the form of USD Coin digital tokens with approximate value of $800 to a cryptocurrency address specified by Doe and based on the representation that these funds would be credited to his account on the 3A trading platform. The tokens were later transferred to a customer deposit account at the cryptocurrency exchange Binance on January 12, 2023 and later to cryptocurrency exchange OKX on January 17, 2023.

32.      Gemini, the crypto platform used by Kevin Clemente, to make this first transfer later prohibited future transfers without any explanation. Doe later represented to Kevin Clemente that he needs to transfer funds to different bank accounts held by different entities in order to further execute the trades on the 3A platform.

33.      Over the course of the next several months, from January 2023 to March 2023, reasonably relying on the instructions from Doe and the 3A platform, Kevin Clemente transferred a total of $299,350 from his and Plaintiff, Barbara Clemente's joint bank account to accounts held by defendants for purpose of funding the investment account on the 3A trading platform. The details related to these transfers are found in Table A of this Verified Complaint.

34.      For a period of time, Kevin Clemente performed trades on the 3A platform not knowing that the trades were fake. The platform purportedly showed that he generated a total of $1.4 million dollars in profits. Kevin Clemente was advised by the 3A platform that he was able to withdraw his funds from this platform with 24-hour notice.

35.      When Kevin Clemente attempted to make a withdrawal from 3A, he was advised that he first needed to prepay taxes of $133,565 on his investment profits. Kevin Clemente was

informed by the trading platform that withdrawing funds from his 3A account to pay taxes was not allowed and he would have to pay the taxes directly.  In response to these representations, on or about April 12, 2023, Kevin Clemente sent a bank wire set forth below in Table A to pay the taxes purportedly needed to make a withdrawal. Subsequently, Kevin Clemente was advised that the recipient bank had frozen the funds, and he would be required to pay the same amount a second time to a different account.

36.    Based on representations made to him, on or about May 8, 2023, Kevin Clemente followed the platform's instructions and paid a second bank wire for $133,565 from his own bank account to pay for the purported tax liability. The balance in his online 3A trading platform was subsequently updated to show a credit of $133,565 had been applied as reimbursement.

37.    Pursuant to his withdrawal request, on or around May 26, 2023, Kevin Clemente was provided with two purported bank wire receipts, which indicated a bank wire of $480,000 had been sent to his account at TD Bank, and a second wire of $480,000 had been sent to his account at PNC Bank.

38.    Kevin Clemente never received these wire transfers, nor did he receive notification from his banks that such transfers were pending.

39.    On or around June 4, 2023, Kevin Clemente was advised by an unknown 3A customer service representative that the wire payments to him had been stopped, and his account had been frozen, by the Office of the Comptroller (OCC) and the Financial Crimes Enforcement Network (FinCEN).

40.    On or around June 4, 2023, Kevin Clemente was told by an unknown 3A customer service representative he was required to pay $150,000 to secure a release of the frozen funds. This

14412591-5

amount was later reduced to $80,000. Based on these representations, on June 7, 2023, Kevin

Clemente sent another wire transfer of $80,000 to DBS Bank.

41.    On or about June 20, 2023, Kevin Clemente later sent a final wire transfer of

$70,000 to DBS Bank.

42.    Unknown 3A customer service representatives continued to represent to Kevin

Clemente that a bank wire had been sent to his account but had been rejected by TD bank for

unknown reason. When Kevin Clemente contacted TD Bank, he was told by TD that there was no

record of any such incoming wire transfer.

## BANK WIRE TRANSFERS

43.    Based on the representations made by Doe and unknown 3A representatives that

money needed to be transferred to a number of US business entities in order facilitate

cryptocurrency trades, Plaintiffs made a number of bank to bank wire transfers to accounts held

and controlled by defendants.

44.    Those wire transfers made by Plaintiffs from their accounts are outlined below in

Table A.

| Receipt Entity | Amount of Transfer | Name of Receiving Bank | Date of Transfer |
|---|---|---|---|
| Pengyuan Inc. | $18,000.00 | Cathay Bank | 01/31/2023 |
| Maehal Enterprises Inc | $71,200.00 | Cathay Bank | 02/08/2023 |
| Trendy Digital Consulting Inc. | $50,150.00 | JPMorgan Chase Bank | 02/24/2023 |
| Guangda Logistics, Inc. | $65,200.00 | JPMorgan Chase Bank | 03/14/2023 |
| Aurorral Trade, Inc. | $15,000.00 | Cathay Bank | 03/20/2023 |
| Danco Global Inc. | $79,800.00 | JPMorgan Chase Bank | 03/30/2023 |

14412591-5

| Middlesex Truck and Auto Body | $133,565.00 | JPMorgan Chase Bank | 04/12/2023 |
|---|---|---|---|
| WLF Trading Limited | $133,565.00 | Cathay Bank | 05/08/2023 |
| Huayi Access Co. Limited | $80,000.00 | DBS Bank (Hong Kong, China) Limited | 06/07/2023 |
| Wenyexing Limited | $70,000.00 | DBS Bank (Hong Kong, China) Limited | 06/20/2023 |

45.     Plaintiffs, relying on the false representations of defendants, transferred a total of $716,480 in US dollars to accounts held and controlled by defendants.

46.     These transfers were not used for trading activity on the 3A platform or to pay for tax liabilities for his investment as Plaintiffs intended. Rather, the large transfers were delivered to various private bank/financial institution accounts owned, operated, and/or affiliated with defendants in a scheme to steal those funds from Plaintiffs.

47.     The fraudulent scheme became evident when Plaintiff Kevin Clemente attempted to withdraw his investment from the 3A platform and only received continued requests for payment of additional funds.  On or around June 27, 2023, an unknown 3A customer service representative advised Mr. Clemente that there was a long wait for withdrawals from customers on the 3A platform and he needed to pay $40,000 in order to secure a faster withdrawal. All statements made to Mr. Clemente regarding the 3A platform were false because as the platform did not even exist and every trade executed on the platform by Kevin Clemente were not real.

48.     Kevin Clemente was repeatedly lied to about funds being paid to Plaintiffs' TD bank account in response to his numerous withdrawal requests. In fact, no such bank transfer ever took place pursuant to Kevin Clemente's requests.

14412591-5

49.     To date, despite repeated request to withdraw and return the funds, Plaintiffs have not received the return of the funds they invested in the trading scheme or payment for alleged tax liabilities.

50.     Plaintiffs retained an outside forensic investigation firm to assist in recovering the stolen funds. Their investigation has shown that Viktoria Zara is a fictitious persona used by Doe to carry out the fraudulent scheme to steal Plaintiffs' funds.

51.     Similarly, the investigation demonstrated that the 3A platform is a fictitious entity, fabricated to carry out the scheme to steal Plaintiffs' assets. There is no record of 3A as the legal name or tradename of any entity registered as a Money Transmitter or Money Services Business with the Financial Crimes Enforcement Network of the U.S. Department of Treasury. Websites used by 3A to conduct this scheme are no longer active.

52.     Certain corporate entities receiving funds from Plaintiffs were potentially formed using fraudulent identities, in order to be used as vehicles in the illegal scheme to defraud Plaintiffs.

53.     Plaintiffs' funds are at risk of complete loss as the perpetrators of the scheme could move the funds to bank accounts or institutions outside U.S. jurisdiction.

54.     At all times relevant hereto, defendants have maintained, held and controlled bank accounts and/or payment platforms, processors, in which they hold all or a portion of the funds stolen from Plaintiffs.

55.     Plaintiffs did not know, and through the exercise of reasonable diligence could not have discovered, the scam that was being perpetrated upon them before they made the transfers as instructed by Doe and the unknown 3A customer service representatives.

14412591-5

56.     Plaintiffs have duly performed all of their duties and obligations, and any conditions precedent to Plaintiffs bringing this action have occurred, have been performed, or else have been excused or waived.

57.     Had Plaintiffs known that they were being scammed by defendants, Plaintiffs would not have transferred their funds and assets to the bank, financial institution accounts and payment platforms controlled by defendants.

58.     As a result of defendants' actions and misrepresentations, Plaintiffs sustained damages to be proven at trial.

**COUNT I**

**COMMON LAW FRAUD**

59.     Plaintiffs incorporate paragraphs 1 to 58 as if fully set forth herein.

60.     As described with specificity above, Defendant Doe and John Does 1-10, alleged 3A customer service representatives, made numerous false statements of material fact to Plaintiff Kevin Clemente.

61.     As described with specificity above, Defendant Doe and John Does 1-10 knew at the time the statements were made to Kevin Clemente that the statements were false and intended that Mr. Clemente rely on these false statements.

62.     As described with specificity above, Defendant Doe and John Does 1-10 used their false statements to induce Kevin Clemente to transfer Plaintiffs' assets and funds to accounts controlled by defendant Doe and other defendants by relying upon these statements of facts.  Each of these transfers are specifically set forth in Table A above.

63.     Kevin Clemente reasonably and justifiably relied on these statements of fact, believing he was engaging in profitable crypto currency trade, in the course of transferring

Plaintiffs' assets and funds to bank accounts and/or payment platforms controlled by defendant Doe and the other defendants.

64.     Defendant Doe conspired with the other defendants to steal or misappropriate Plaintiff's assets and funds after he made the transfers based on Doe's and John Does 1-10 false directions.

65.     By reason of the foregoing, Plaintiffs have sustained damages in an amount to be proven at trial.

Wherefore, Plaintiff demands a judgment against Defendant Doe for an amount to be determined at trial, including an award of attorney's fees, interest, costs and punitive damages.

## COUNT II

### CONVERSION

66.     Plaintiffs incorporate paragraphs 1 to 65 as if fully set forth herein.

67.     At all relevant times, Plaintiffs are and continues to be the rightful owner of their assets and funds totaling $716,480 U.S. Dollars. And prior to the transfers, they had right to immediate, absolute and unconditional possession of their money in question.

68.     Plaintiffs transferred their funds and assets to various bank accounts owned, operated, controlled and/or affiliated with defendants.

69.     Each of the named defendants by his or her wrongful acts, unlawfully acquired property which was rightfully owned by Plaintiffs and converted such property for defendants' own use and benefit.

70.     Defendants were enriched at Plaintiffs' expense and detriment.

71.     Defendants refused to return Plaintiffs' assets when Plaintiff attempted to demanded the return of the assets.

14412591-5

72.     By reason of the foregoing, Plaintiffs have sustained damages in an amount to be proven at trial.

Wherefore, Plaintiffs demand a judgment against all defendants for an amount to be determined at trial, including an award of attorney's fees, interest, costs and punitive damages.

## COUNT III

## CONSPIRACY

73.     Plaintiffs incorporate paragraphs 1 to 72 as if fully set forth herein.

74.     Defendants conspired with one another to perpetrate an unlawful act upon Plaintiffs or to perpetrate a lawful act by unlawful means by making multiple misrepresentations of fact, in an effort to extract Plaintiffs' assets and funds totaling $716,480 dollars solely to enrich themselves and not to fund the purportedly legitimate purpose of cryptocurrency investment as represented to Plaintiffs.

75.     As described with specificity above, Defendants each agreed to the illicit purpose of scamming Plaintiffs and stealing Plaintiffs' assets and funds for their own personal gains.

76.     As described with specificity above, Defendants were each aware of, and consented to, the misrepresentations detailed above and knew that the efforts to collect assets from Plaintiffs was all part of a fraud aimed solely at enriching themselves without any intent to remunerate Plaintiffs.

77.     As described with specificity above, each defendant knew that the investment/trade scheme was a fraudulent one, and they accepted and assisted in these activities as part of a broader fraudulent scheme designed to steal assets and funds from Plaintiffs.

78.     As a direct and proximate result of defendants' conspiracy, Plaintiffs suffered damages in an amount to be proven at trial.

14412591-5

Wherefore, Plaintiffs demand a judgment against all defendants for an amount to be determined at trial, including an award of attorney's fees, interest, costs and punitive damages.

## COUNT IV

## SECURITIES FRAUD

79.   Plaintiffs incorporate paragraphs 1 to 78 as if fully set forth herein.

80.   As described with specificity above, Defendants, acting in concert, employed a scheme to defraud Plaintiffs.

81.   The investment/trade scheme were "securities" within the meaning of the Securities Act, Plaintiffs were led to believe that the trade scheme would generate income for him and his wife.

82.   Defendants made untrue statements of material fact, including but not limited to, Plaintiff's funds would be used to trade on the 3A platform as an investment for Plaintiff Kevin Clemente; that he had to prepay taxes in order to withdraw his funds; and that he need to make additional payments in order to unfreeze his account.

83.   No trade of crypto currency on the 3A platform ever occurred even though Plaintiffs transferred $716,480 to various entities controlled by defendants for that purpose.

84.   As described with specificity above, Kevin Clemente did not know of the falsity of the misrepresentations and relied on the untrue statements of fact to make his alleged investment and subsequent bank wire transfers set forth in Table A.

85.   Defendants' fraudulent conduct is a direct violation of section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10(b)-5 (17 C.F.R. § 240.10b-5).

86.   As a result of the untrue statements, misrepresentations made by defendants in carrying out this fraudulent scheme, Plaintiffs sustained damages to be proved at trial.

14412591-5

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Kevin Clemente and Barbara Clemente, pray for judgment against defendants as follows:

### I.        Temporary Restraining Order and Preliminary Injunction

A.        Asset Freeze---The Defendants and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with any of them, and each of them, be and hereby are temporarily restrained and enjoined from, directly or indirectly withdrawing, transferring, assigning, selling, pledging, changing, wasting, dissipating, converting, concealing, encumbering, or otherwise disposing of, in any manner, any funds, assets, located in bank accounts, payment platforms, and/or other financial institutions identified in this Complaint.

B.        Directive to Banks and Financial Institutions: Any bank, payment platform, and/or financial institution, located within the territorial jurisdiction of the United States courts that holds, controls, or maintains custody of any funds, accounts or other assets in the name, for the benefit or under the control of Defendants, Trendy Digital Consulting Inc., Maehal Enterprises Inc., Guangda Logistics, Inc., Aurorral Trade, Inc., Pengyuan Inc., Danco Global Inc., Middlesex Truck and Auto Body, WLF Trading Limited, Huayi Access Co. Limited and Wenyexing Limited (collectively the "Relief Defendants"), or for which the Relief Defendants are signatories or have signing authority, shall prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale or other disposal of any funds or other assets in such accounts.

C.        Shall provide to counsel for Plaintiff, within five (5) business days of receiving a copy of this Order, a statement setting forth:

14412591-5

(1)     the identification number of each and every account or asset titled in the name, individually or jointly, of, or held on behalf of, or for the benefit of, any Relief Defendant;

(2)     the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

(3)     A list of all transactions involving the asset or account which have occurred within the last 30 days; and

(4)     Upon request by Plaintiff, promptly provide to Plaintiff's counsel identified below copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, and 1099 forms.

**II.     Equitable Remedy of Constructive Trust**

Plaintiffs seek to impose a constructive trust on bank accounts currently wrongfully held and controlled by Defendants as a result of their fraudulent acts. Furthermore, Defendants through actual fraud and other wrongful conduct have obtained Plaintiffs' assets, totaling $716,480, which they should not be permitted to hold in equity and good conscience. These assets must be held in trust and be disgorged to Plaintiffs' benefit, as defendants are not entitled to the benefit of the wrongfully converted property that was scammed from Plaintiffs.

Therefore, Plaintiffs demand the equitable imposition of a constructive trust over these assets being held by defendants in their bank accounts and/or payment platforms, and further demand the restoration of those assets to Plaintiff.

## OTHER RELIEF

A.     Ordering compensatory damages in excess of $75,000.

B.     Awarding punitive damages in the amount allowable under New Jersey law;

C.     Awarding Plaintiffs pre-judgment interest;

14412591-5

D.      Awarding Plaintiffs their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, accountants, and experts, and reimbursement of Plaintiffs' expenses;

E.      Granting such other and further relief as this Court may deem just and proper.


**CONNELL FOLEY LLP**
Leo J. Hurley, Jr.
Aaron H. Gould
Harborside 5
185 Hudson Street, Suite 2510
Jersey City, New Jersey 07311
*Attorneys for Plaintiffs*
*Kevin Clemente and Barbara Clemente*


BY:    */s/ Aaron H. Gould*
        LEO J. HURLEY, JR.
        AARON H. GOULD


**AMUNDSEN DAVIS LLC**
Joseph P. Carlasare
Gary Zhao
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
*Attorneys for Plaintiffs*
*Kevin Clemente and Barbara Clemente*
(Motion for Pro Hac Vice Forthcoming)


Dated: January 19, 2024

## L. CIV. R. 11.2 CERTIFICATION

I hereby certify that to the best of Plaintiffs' knowledge, the matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

> **CONNELL FOLEY LLP**
> Leo J. Hurley, Jr.
> Aaron H. Gould
> Harborside 5
> 185 Hudson Street, Suite 2510
> Jersey City, New Jersey 07311
> *Attorneys for Plaintiffs*
> *Kevin Clemente and Barbara Clemente*

BY:     */s/ Aaron H. Gould*
       LEO J. HURLEY, JR.
       AARON H. GOULD

14412591-5

## **VERIFICATION**

Under penalties as provided by law pursuant to Rule 11 of the Federal Rules of Civil Procedure, the undersigned, Kevin Clemente and Barbara Clemente, certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certify as aforesaid that they verily believe the same to be true.

_____
Kevin Clemente

_____
Barbara Clemente

Dated: January 16, 2024

-20-