**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN & BARBARA CLEMENTE,<br><br>            Plaintiffs,<br><br>         v.<br><br>JANE DOE, *et al.*,<br><br>            Defendants. | Civil Action No. 24-314 (MAS) (JBD)<br><br>**MEMORANDUM ORDER** |

**SHIPP, District Judge**

    This Matter comes before the Court on Plaintiffs Kevin ("Clemente") and Barbara Clemente's (collectively "Plaintiffs") motion for default judgment under Federal Rule of Civil Procedure 55 (ECF No. 11)[1] following the failure of Defendant Middlesex Truck and Auto Body, Inc.[2] ("Middlesex") to answer or otherwise respond (ECF No. 9). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Local Civil Rule 78.1. For the reasons set forth below, the Court denies Plaintiffs' Motion for default judgment without prejudice.

---

[1] Unless otherwise specified, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] Middlesex is one of eleven named defendants in the Complaint (collectively, "Defendants"). (Compl. ¶¶ 4-17, ECF No. 1.)

Plaintiffs are both 71 years old and New Jersey citizens.[3] (Compl. ¶¶ 4-5, ECF No. 1.) Middlesex "is a Massachusetts Corporation" which "controlled and maintained a bank account at JP Morgan Chase Bank [that] received a wire transfer from Plaintiffs" totaling $133,565. (Compl. ¶ 13.)

In December 2022, an unidentified defendant ("Jane Doe") reached out to Clemente representing that she lives in San Diego, California and profitably trades cryptocurrency derivatives. (*Id.* ¶¶ 25, 27.) Based on Jane Doe's representations, in January 2023, Clemente registered for an account on a perceived cryptocurrency trading platform named "3A." (*Id.* ¶ 28.) Jane Doe demonstrated to Clemente how to perform trades on the platform. (*Id.* ¶ 29.) Jane Doe's trades appeared to return large profits. (*Id.*) In fact, however, no real trades were being executed. (*Id.*)

Between January 2023 and March 2023, Clemente began trading on 3A for his own benefit. (*Id.* ¶¶ 30-33.) In total, Clemente transferred $299,350 from Plaintiffs' joint bank account to Defendants for the purpose of funding Clemente's investment account on 3A. (*Id.* ¶ 33.) To Clemente's knowledge, the trades he thought he was performing on 3A generated $1.4 million in total profits. (*Id.* ¶ 34.) Accordingly, given the large purported profits, Clemente attempted to withdraw money from 3A. (*Id.*)

When Clemente first attempted a withdrawal, he was advised that he needed to prepay taxes on his investment profits. (*Id.* ¶ 35.) On April 12, 2023, Clemente wired $133,565 to a bank account at JPMorgan Chase Bank for this purpose. (*Id.* ¶¶ 35, 44.) This was the account owned by

---

[3] With respect to the instant motion, the Court accepts all factual allegations in the Complaint, except those relating to damages, as true. *See PPG Indus. Inc. v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 161 (3d Cir. 2022) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

2

Middlesex. (*See id.* ¶ 44.) Clemente was then advised that JPMorgan Chase Bank froze Clemente's funds, and that he must pay the same amount, $133,565, a second time to a different account. (*Id.* ¶ 35.) Again, Clemente obliged. (*Id.* ¶ 36.) On May 26, 2023, Clemente received two purported bank wire receipts which indicated that a $480,000 wire was sent to his TD Bank account and that $480,000 was sent to his PNC Bank account. (*Id.* ¶ 37.) Clemente never received these wire transfers, nor did Clemente's banks ever show such transfers as pending. (*Id.* ¶ 38.)

On June 4, 2023, an unknown 3A customer service representative advised Clemente that the $480,000 wire payments he requested were stopped by the Office of the Comptroller ("OCC") and the Financial Crimes Enforcement Network ("FinCen"). (*Id.* ¶ 39.) The same representative then informed Clemente that the only way he could release the frozen funds was to pay an additional $150,000. (*Id.* ¶ 40.) In purported service to Clemente, the representative later was able to reduce the amount Clemente owed to $80,000. (*Id.*) Clemente once again made the requested payment. (*Id.*) A few weeks later, Clemente sent one last $70,000 wire transfer to try and access his chimerical cryptocurrency earnings. (*Id.* ¶ 41.)

In the end, Plaintiffs paid Defendants $716,480 to various bank accounts at JPMorgan Chase Bank, Cathay Bank, and DBS Bank. (*Id.* ¶¶ 44, 45.) Plaintiffs never received any funds in return. (*Id.* ¶ 49.)

By the end of June 2023, Plaintiffs began to suspect that 3A and Jane Doe had orchestrated a fraud. (*Id.* ¶ 47.) As such, Clemente made no further payments and sought the assistance of a private investigator. (*Id.* ¶ 50.) The private investigator issued a lengthy report concluding that Plaintiffs were the victims of a fraudulent scheme. (*Id.* ¶¶ 50-52.)

On the above facts, Plaintiffs file this civil suit against eleven identified defendant entities, including Middlesex.[4] (Compl. ¶¶ 4-17.) Plaintiffs allege four counts in their Complaint: (1) common-law fraud; (2) conversion; (3) conspiracy; and (4) securities fraud. (*Id.* ¶¶ 59-86.) Middlesex failed to answer Plaintiffs' Complaint or file a notice of appearance before a March 8, 2024 deadline. (ECF No. 9.) Default was entered as to Middlesex (ECF No. 10) and Plaintiffs moved for default judgment (ECF No. 11). The Court now considers whether to grant the Motion.

Federal Rule of Civil Procedure 55 authorizes the Court to enter default judgment against "a properly served defendant who fails to plead or otherwise defend an action." *La. Counseling & Family Serv., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing *Anchorage Assoc. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Where a plaintiff cannot demonstrate proper service, default judgment is unachievable. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 18-19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside."). Here, Plaintiffs fail to demonstrate proper service upon Middlesex, and as such, Plaintiffs' motion is denied.

To begin, Rule 4 governs service and provides that a corporation must be served by "delivering a copy of the summons and the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a corporation can be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) provides that to adequately serve an individual, a plaintiff must follow "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is location or where service is

---

[4] Plaintiffs also identify fictitious defendants that have not yet been identified. (Compl. ¶ 17.)

made." Here, Plaintiffs sought to effectuate service upon Middlesex in Massachusetts. (Summons, ECF No. 9.) In Massachusetts, to adequately serve an individual, a plaintiff must serve:

> an individual by delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process, provided that any further notice required by such statute be given.

Mass. R. Civ. P. 4(d)(1).

Crucially, Plaintiffs' submitted summons as to Middlesex is deficient under the above outlined rules. Specifically, Plaintiffs' submitted summons indicates only that personal service was effectuated upon Middlesex, a corporation, through Patrice Wilson, a "clerk." (Summons.) Plaintiffs do not provide whether the "clerk" was authorized to accept service on behalf of Middlesex, or whether she was a managing employee or agent of any kind. (*See generally id.*) In fact, other than identifying her as a "clerk", Plaintiffs provides no further information about the individual served other than her physical appearance. (*Id.*) In sum, from the evidence submitted, the most the Court can conclude is that Patrice Wilson is an employee of Middlesex who may or may not be authorized to receive service on behalf of the corporation. (*See id.*) Service upon Middlesex was therefore insufficient under Rule 4(h), Rule 4(e), and Massachusetts Rule of Civil Procedure 4(d). *West v. Am. Honda Motor Co.*, No. 08-700, 2008 WL 4104683, at *4 (D.N.J. Aug. 28, 2008) (finding that service upon a potential agent, like an employee, is only effective if a plaintiff can show that "the agent was actually appointed by the defendant for the specific purpose of receiving process." (citation omitted)); *See Sykes v. Dish Network*, No. 1585, 2005 WL 1216589, at *2 (Mass. App. Ct. May 18, 2005) (finding that "[g]enerally, delivery of the summons and complaint to a manager or other employee *in charge of corporate business* constitutes effective service on a foreign or domestic corporation" but that where it is unclear whether the individual

5

served was a "corporate officer, person in charge of the business, . . . agent authorized by appointment or law to receive service," or a general agent occupying a "sufficiently necessary" function of the business, service is ineffective (emphasis added) (citations omitted)).

As default judgment is a disfavored remedy, *see Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021), and because Plaintiffs have failed to show service upon Middlesex was proper,

**IT IS** on this 13th day of December 2024, **ORDERED** as follows:

1. Plaintiffs' Motion for Default Judgment (ECF No. 11) is **DENIED WITHOUT PREJUDICE**.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**